*28 ATTORNEY DISCIPLINARY PROCEEDINGS
| .PER CURIAM. *
This attorney disciplinary proceeding arises from six counts of formal charges instituted by the Office of Disciplinary Counsel (“ODC”) against respondent, David Allan Hilburn, currently a suspended attorney.[1]
UNDERLYING FACTS

Count I

Marlin Hadley retained respondent to file a personal injury action against Unique Industries, Inc. in connection with an accident that occurred on January 12, 1994. Respondent advised ■ Ms. Hadley that he had contacted the defendant’s liability insurer and that her case was progressing smoothly. More than one year after the accident, on January 13, 1995, respondent filed a petition for damages on behalf of his client in city court. Ms. Hadley’s last contact with respondent was a letter dated March 17, 1995, in which he advised her that he had preserved her claim by filing suit within the prescriptive date. Thereafter, Ms. Hadley made repeated unsuccessful attempts to contact respondent by telephone and by mail. On November 29, 1995, Ms. Hadley learned that respondent had filed her suit on January 13, 1995, after the prescriptive date, without her knowledge or consent, and that her signature was forged on the verification affidavit. Subsequently, he failed to respond to Ms. Hadley’s offer to settle his legal liability for the sum of $1,000.

\9Counts II though IV

On May 21, 1994, Kerry Jane Gibbs retained respondent to represent her in connection with an automobile accident. On or about May 17, 1995, respondent settled his client’s claim with the insurer for $7,000 without her knowledge or consent. When Ms. Gibbs learned of the settlement offer on May 23, 1995, she rejected it. Respondent’s next contact with Ms. Gibbs was in November, 1995, when he advised her that he would forward a check in the amount of $5,000 to her the following day.
The settlement check in the amount of $7,551.10 was endorsed by respondent and also signed “Kerry Gibbs by D.H.” Respondent negotiated the check, but he never submitted a signed release to the insurer and he never delivered any funds to his client.
On August 12, 1996, Ms. Gibbs executed and filed an affidavit of forged endorsement concerning the settlement check, attesting to the facts that she did not endorse the check and that she failed to receive any funds. On July 15, 1997, an attorney for the bank on which the check was drawn advised respondent that the *29 item had been returned, and that Ms. Gibbs attested to the fact that she failed to receive any proceeds from the check. Respondent made no effort to resolve the matter or to reimburse the bank for its loss on the dishonored check.
Initially, respondent failed to cooperate with the ODC in the investigation of Ms. Gibbs’ and Ms. Hadley’s complaints. He further refused to provide any information concerning his client trust account and his compliance with IOLTA Rules. However, on February .18, 1998, respondent gave a sworn statement to the ODC, misrepresenting that the retainer agreement with Ms. Gibbs authorized him to deposit checks into his client trust account. He further claimed that he had Ms. Gibbs’ proceeds on deposit in his client trust account. However, he failed to provide a copy of the retainer contract or any other evidence of his alleged authorization to negotiate the check.

Count V

On May 11, 1995, respondent filed a petition for divorce and to resolve incidental matters on behalf of his client, Cristina Caraway Davis. Four months later, Stanley Davis, the husband of respondent’s client, filed a petition for divorce and also sought a determination of the incidental matters. Although the court granted a divorce in favor of Mr. Davis on April 18, 1996, |,.¡respondent failed to advise his client of the petition filed by her husband, and he never provided her with a copy of the judgment. In addition, the community property issues were pending for over one and a half years without action or communication by respondent to his client.
Respondent failed to respond to the ODC’s requests for information regarding Ms. Davis’ complaint. Moreover, although respondent was suspended from the practice of law on June 12, 1998, he failed to advise his client of his inability to continue representing her and failed to release her file.

Count VI

Respondent registered for and attended the 1996 Recent Developments in Legislation and Jurisprudence Seminar sponsored by the Louisiana State University Law Center (“LSU”) on September 19 and 20, 1996. Respondent issued a check drawn on his general office operating account in the amount of $285 to pay for his attendance, and he claimed credit for fifteen hours of continuing legal education. However, respondent’s banking institution returned the check due to insufficient funds. LSU made repeated attempts to collect payment to no avail. Although he agreed to redeem the returned check and $10 service charge, the respondent failed to do so. On October 28, 1997, the Mandatory Continuing Legal Education (“MCLE”) Committee of the Louisiana State Bar Association advised respondent that his failure to pay for the seminar constituted a violation of his professional obligations. To date, respondent has failed to tender payment to LSU for the returned check.
Respondent stipulated to the facts reported by LSU and the MCLE Committee in a deposition conducted by the ODC on February 18,1998.
DISCIPLINARY PROCEEDINGS
Initially, the ODC filed three counts of formal charges against respondent, and later supplemented and amended the charges with counts IV through VI on August 10, 1998.[2] Although | respondent *30 received service in each instance, he failed to submit answers. As a result, the ODC submitted the case to the hearing committee on documentary evidence.

Hearing Committee Recommendation

The hearing committee concluded respondent violated the professional rules as charged. Specifically, it found respondent misappropriated client and third party funds, failed to communicate with his clients, and lied to his clients and the ODC. The committee noted respondent’s conduct was knowing and intentional, and he failed to express remorse for his actions.
Citing the ABA Standards for Imposing Lawyer Sanctions[3] and Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La.1986), the hearing committee determined the baseline sanction for respondent’s misconduct was disbarment, due to his intentional and knowing failure to remit or account for client funds. Based on the presence of several aggravating factors and the absence of mitigating factors,[4] the committee found no reason to deviate from the baseline sanction, and therefore recommended respondent be disbarred.
| ¡dDisciplinary Board Recommendation
The disciplinary board concurred in the findings and recommendation of the hearing committee. Citing jurisprudence from this court,[5] it agreed the baseline sanction for respondent’s misconduct was disbarment.
The board adopted all the aggravating factors cited by the committee and further recognized the vulnerability of the victims. Based on these circumstances, it recommended respondent be disbarred.
*31 Neither respondent nor the ODC filed an objection in this court to the recommendation of the disciplinary board.
DISCUSSION
The record supports the findings of fact made by the hearing committee and disciplinary board that respondent committed the professional misconduct as charged. Respondent knowingly and intentionally neglected legal matters, converted funds from his clients and third parties, and failed to provide restitution. This conduct, combined with that involved in his prior disciplinary record, demonstrates that respondent lacks the moral fitness to practice law and is a threat to his clients, the profession and the public.
Accordingly, we conclude disbarment is the appropriate sanction under the facts presented.
DECREE
Upon review of the findings and recommendation of the hearing committee and disciplinary board, and considering the record, it is the decision of the court that the name of respondent, David Allan Hil-burn, be stricken from the roll of attorneys, and that his license to practice law in the State of Louisiana be revoked. It is further ordered that respondent make full 1 ((restitution to his clients with legal interest. All costs and expenses of these proceedings are assessed to respondent in accordance with Supreme Court Rule XIX, § 10.1.

 Calogero, C.J. not on panel. Rule IV, Part II, § 3.

. Respondent is currently suspended from the practice of law for a period of one year and one day, based on his misappropriation of funds from his local bar association chapter while acting as its treasurer. In re: Hilburn, 98-0288 (La.5/29/98), 715 So.2d 395.

. The formal charges allege the following professional violations of the Rules of Professional Conduct: Rules 1.2 (scope of representation limited to client’s authority), 1.3 (lack of diligence), 1.4 (failure to comply with reasonable requests for information), 1.5(f) (failure to refund client funds), 1.15(a) (failure to safeguard client property), 1.15(b) (failure to safeguard client funds), 1.15(c) (failure to segregate client property from attorney’s when dispute arises), 1.15(d) (failure to maintain and comply with terms of IOLTA account), 1.16(d) (failure to protect client interests upon termination of representation), 3.4(c) (knowing disobeyance of an obligation under the rules of a tribunal), 8.1(a) (knowing mis *30 representation of a material fact); 8.1(b) (knowing failure to respond to a lawful demand for information from a disciplinary authority), 8.1(c) (failure to cooperate in ODC investigation), 8.4(a) (violating the Rules of Professional Conduct), 8.4(b) (engaging in criminal acts adversely reflecting on the lawyer's honesty), 8.4(c) (engaging in conduct involving fraud, deceit, dishonesty or misrepresentation), 8.4(d) (engaging in conduct prejudicial to the administration of justice) and 8.4(g) (failure to cooperate with the ODC).

.Standard 4.11 suggests disbarment is appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client; Standard 4.41(c) suggests that disbarment is appropriate when a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to the client; Standard 4.61 suggests disbarment is appropriate when a lawyer knowingly deceives a client; Standard 6.22 suggests suspension is appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party; Standard 7.2 suggests suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system; Standard 8.2 suggests suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system or the profession.

. The hearing committee noted the presence of the following aggravating factors: ■ dishonest or selfish motive; pattern of misconduct; multiple offenses; bad faith obstruction of disciplinary proceedings; deceptive practices during the disciplinary process; refusal to acknowledge wrongful nature of conduct; and indifference to making restitution. It also recognized the respondent’s prior disciplinary record, consisting of a suspension from the practice of law for one year and one day imposed by this court, and two admonitions (96-ADB-050, 10/16/96; and 97-ADB-031, 5/28/97).

. In addition to Hinrichs, tire board relied on In re: Lewis, 98-2825 (La.1/29/99), 728 So.2d 846 (attorney disbarred for forgery of clients' names on settlement checks, conversion of funds and failure to provide restitution); In re: Fergurson, 98-2591 (La.12/18/98), 730 So.2d 429 (attorney disbarred for eight counts of misconduct stemming from neglect of legal matters, failure to communicate, failure to refund unearned fees, conversion of client funds and failure to cooperate); and In re: Lyons, 98-2590 (La.12/11/98), 722 So.2d 998 (attorney disbarred for eight counts of misconduct stemming from conversion of client funds, neglect of legal matters and failure to communicate).