ATTORNEY DISCIPLINARY PROCEEDDINGS
JjPER CURIAM.
This disciplinary matter arises from three sets of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, David Allan Hilburn, a currently disbarred attorney.[1]
UNDERLYING FACTS AND PROCEDURAL HISTORY

99-DB-027

Count I

In October 1995, Rebecca Aucoin paid respondent $500 to handle a divorce and child custody matter. Respondent initially performed some work on his client’s behalf, but he failed to complete the representation. He also failed to account for any earned portion of the legal fee and failed to refund the unearned portion of the fee.
In August 1998, Ms. Aucoin filed a complaint against respondent with the ODC. On September 11, 1998, the ODC forwarded a copy of the complaint to respondent at his primary registration statement address. Respondent failed to reply to the complaint.
*472 The ODC alleges that respondent’s conduct in this matter violates the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with diligence and promptness in representing a client), 1.4 (failure to communicate with Ra client), 1.5(f) (payment of fees in advance of services), 1.16(a) and (d) (termination of the representation), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(g) (failure to cooperate with the ODC in its investigation).

Count II

In February 1997, Frank and Annie Gal-breath retained respondent to prepare new wills for them. Thereafter, the Galbreaths sought to have respondent modify the wills; however, he failed to do so.
In an unrelated matter, Chester Veach retained respondent to handle the succession of his mother, Birdie Foshee Veach, who died intestate in January 1997. Respondent subsequently caused the signature of Damon Veach, Chester Veach’s brother, to be forged on a pleading filed in the court record of the succession.
In September 1998, Damona Veach, the daughter of Damon Veach and the greatr niece of the Galbreaths, filed a complaint against respondent with the ODC. On September 21, 1998, and again on October 22, 1998, the ODC forwarded a copy of the complaint to respondent at multiple addresses. Respondent failed to reply to the complaint.
The ODC alleges that respondent’s conduct in this matter violates the following provisions of the Rules of Professional Conduct: Rules 1.2 (scope of the representation), 1.4,1.7(b) (conflict of interest), 1.14 (client under a disability), 8.1(c), 8.4(a), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(c), 8.4(d) (engaging in conduct prejudicial to the administration of justice), and 8.4(g).
| -¡Count III
On May 29, 1998, this court suspended respondent from the practice of law for a period of one year and one day. In re: Hilburn, 98-0288 (La.5/29/98), 715 So.2d 395. By letter dated September 25, 1998, respondent communicated with several persons concerning his handling of the succession of Annie Foshee Galbreath.[2] On the same date, the heirs terminated respondent’s representation and directed him to release the file in the matter;[3] however, he failed to do so. By letter dated October 8, 1998, Hal Lyons, the attorney who was retained to complete the succession, also requested the succession file, but again, respondent failed to comply with the request.
In September 1998, Mr. Lyons filed a complaint against respondent with the ODC. On October 6, 1998, the ODC forwarded a copy of the complaint to respondent at his primary registration statement address. Respondent failed to reply to the complaint.
The ODC alleges that respondent’s conduct in this matter violates the following provisions of the Rules of Professional *473 Conduct: Rules 1.16(a) and (d), 5.5(a) (engaging in the unauthorized practice of law), 8.1(c), 8.4(a), 8.4(c), 8.4(d), and 8.4(g).
On April 21, 1999, the ODC filed three counts of formal charges against respondent in 99-DB-027. Respondent failed to answer or otherwise reply to the formal charges. Accordingly, no formal hearing was held, and the matter was submitted to the hearing committee on January 7, 2000 solely on the ODC’s documentary evidence. See Supreme Court Rule XIX, § 11(E)(3). Following its | consideration, the hearing committee filed a recommendation of disbarment on September 25, 2000. Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.

99-DB-103

In April 1997, Dolores Boddie Kimminau retained respondent to handle the succession of her mother, Cannie Boddie. Mrs. Kimminau’s husband, Jerome, paid respondent’s fee of $750, court costs of $115, and inheritance taxes of $1,640.68. On April 21, 1997, respondent obtained a judgment of possession recognizing Mrs. Kimminau and her two sisters as sole heirs and placing each of them in possession of an undivided one-third interest in Mrs. Boddie’s property.[4] Respondent estimated that each of the three heirs was to receive the net sum of $37,669.19 in cash, and he retained $8,839.55 for payment of any outstanding expenses. Thereafter, respondent was advised that one of the heirs, Murvis Boddie McClelland, did not receive her share of the succession proceeds. Respondent advised that he had forwarded the funds to Mrs. McClelland in the form of a cashier’s check, and that it must have been lost in the mail. Respondent subsequently satisfied the payment due to Mrs. McClelland, but in order to do so, he borrowed $12,661.19 from Mrs. Kimminau. On August 29, 1997, respondent executed a promissory note in favor of Mrs. Kimmi-nau in the amount of $12,661.19, payable at such time as he was reimbursed for the lost cashier’s check, but not later than November 1, 1997. Respondent did not repay Mrs. Kimminau and he failed to pursue the issue of the lost cashier’s check. Respondent subsequently severed all communication with the Boddie heirs and failed to respond to any demands for payment of the promissory note. He also failed to account for the $8,839.55 he withheld for debts owed by the succession.
| RIn May 1999, Jerome Kimminau filed a complaint against respondent with the ODC. On June 14,1999, the ODC forwarded a copy of the complaint to respondent at his primary registration statement address. Respondent failed to reply to the complaint.
On October 14, 1999, the ODC filed one count of formal charges against respondent in 99-DB-103, alleging that his conduct in this matter violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.8(a) (prohibited transactions between a lawyer and client), 1.15(a), (b), and (e) (safekeeping property of clients or third persons), 1.16(d), 8.1(c), 8.4(a), 8.4(b), 8.4(c), 8.4(d), and 8.4(g). Respondent failed to answer or otherwise reply to the formal charges. Accordingly, no formal hearing was held, and the matter was submitted to the hearing committee on April 19, 2000 solely on the ODC’s documentary evidence. Following its consideration, the hearing committee filed a recommendation of disbarment on June 2, 2000. Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.

*474
00-DB-002

As previously noted, this court suspended respondent from the practice of law for a period of one year and one day on May 29, 1998. On July 3, 1998, Kayla Hopper paid respondent $500 to represent her son in a matter pending in juvenile court. Respondent had several discussions with Ms. Hopper concerning his efforts in handling the matter, and he advised her that he was trying to resolve the matter with the district attorney. However, respondent did not inform his clients of his suspension from the practice of law. On February 12, 1999, respondent appeared in court for a hearing in the matter, but before the case was called, he was removed from the | ^courtroom by the City Marshall for engaging in the unauthorized practice of law.[5] Respondent has never refunded to Ms. Hopper the legal fee she paid.
In August 1999, Ms. Hopper filed a complaint against respondent with the ODC. On September 23, 1999, the ODC forwarded a copy of the complaint to respondent at multiple addresses. Respondent faded to reply to the complaint.
On January 7, 2000, the ODC filed two counts of formal charges against respondent in 00-DB-002, alleging that his conduct in this matter violated the following provisions of the Rules of Professional Conduct: Rules 5.5(a), 8.1(c), 8.3(a) (reporting professional misconduct), 8.4(a), 8.4(b), 8.4(c), 8.4(d), and 8.4(g). Respondent failed to answer or otherwise reply to the formal charges. Accordingly, no formal hearing was held, and the matter was submitted to the hearing committee on May 18, 2000 solely on the ODC’s documentary evidence. Following its consideration, the hearing committee filed a recommendation of disbarment on June 7, 2000. Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.

Disciplinary Board Recommendation

The disciplinary board issued a single recommendation to this court encompassing the three sets of formal charges. After reviewing the record of this matter, the board agreed the Rules of Professional Conduct were generally applied correctly.[6] The board found that respondent knowingly and intentionally violated |7duties owed to his clients, the public, the legal system, and the profession. In 99-DB-027, the board found respondent neglected his clients’ legal matters and failed to release the Galbreath succession file after his representation was terminated. In 99-DB-103, the board found that Mrs. Kimminau was deprived of a substantial amount of funds due her, that respondent failed to account for the sums he withheld for debts owed by the Boddie succession, that he neglected the succession matter, and failed to communicate with his clients. Finally, in 00-DB-002, the board found respondent failed to inform Ms. Hopper that he had *475 been suspended from the practice of law and therefore could not represent her son in the juvenile matter, and that he never refunded the $500 fee Ms. Hopper paid. In each of the three sets of formal charges, the board found respondent disobeyed his professional obligation to cooperate in the disciplinary investigation of the underlying complaints. The board concluded this misconduct is serious and that the applicable baseline sanction is disbarment.
As aggravating factors, the board recognized prior disciplinary offenses,[7] dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary process, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, and indifference to making restitution. The board found no mitigating factors are present.
|sIn light of these findings, and particularly considering respondent’s previous disciplinary history, the board concluded there is no reason to deviate from the baseline sanction, and recommended respondent be disbarred. The board also recommended that respondent be ordered to make restitution and/or provide an accounting to his victims.
Although neither respondent nor the ODC objected to the disciplinary board’s recommendation, this court, on its own motion, ordered briefing pursuant to Supreme Court Rule XIX, § 11(G)(1)(a). The court’s September 18, 2002 order directed the parties “to address whether the sanction of permanent disbarment pursuant to Supreme Court Rule XIX, Sections 10(a) and 24, as amended August 1, 2001, is appropriate under the facts of this ease.”
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Based on our independent review, we conclude the findings of the hearing committee, as modified by the disciplinary board, are supported by the record. It cannot be disputed that respondent has violated numerous provisions of the Rules of Professional Conduct. There are no mitigating factors present; however, numerous | Baggravating factors exist. Under these circumstances, we conclude the baseline sanction is disbarment. However, given the egregiousness of respondent’s misconduct, we will further consider whether permanent disbarment is warranted.
*476 On August 1, 2001, after a lengthy period of study and public comment, this court adopted amendments to Supreme Court Rule XIX, § 10[8] and § 24[9] to provide for the sanction of permanent disbarment. In re: Gros, 98-0772 (La.3/15/02), 815 So.2d 799; In re: Parker, 00-3532 (La.3/15/02), 815 So.2d 794; In re: Patrick, 01-1419 (La.3/15/02), 815 So.2d 804. In our commentary accompanying the amendment, we stated, in pertinent part:
In the public interest, the Court has amended Louisiana Supreme Court Rule XIX to codify Permanent Disbarment as an available sanction for attorney misconduct. While the Court has always had the discretion to deny an application for readmission after the requisite five (5)-year waiting period after disbarment, an attorney who is permanently disbarred under these circumstances will be prohibited from applying for readmission to the bar. These amendments reflect the judgment of the Court that in some instances lawyer misconduct may be so egregious as to warrant a sanction of permanent disbarment based on the facts of an individual case and in consideration of the guidelines in |inAppendix E to the Rules of Lawyer Disciplinary Enforcement.
In Appendix E, we set forth several guidelines illustrating the type of cases which might warrant permanent disbarment. We explained that these guidelines were not intended to bind this court in its decisionmaking, but to provide “useful information to the public and to lawyers concerning the types of conduct the Court might consider to be worthy of permanent disbarment.” Under Guidelines 1, 8, and 9, respectively, “repeated or multiple instances of intentional conversion of client funds with substantial harm,” “following notice, engaging in the unauthorized practice of law ... during the period of time in which the lawyer is suspended from the practice of law or disbarred,” and “instances of serious attorney misconduct ... preceded by suspension or disbarment for prior instances of serious attorney misconduct ...” are grounds for permanent disbarment. Clearly, respondent’s conduct in the matters at issue falls squarely within these guidelines.
As recently noted in In re: Morphis, 01-2803 (La.12/4/02), 831 So.2d 934, we do not lightly impose the sanction of permanent disbarment. Nonetheless, we are firmly convinced that we would be remiss in our constitutional duty to regulate the practice of law if we did not impose that sanction here. Respondent’s conduct is *477 unquestionably serious in nature. He engaged in the unauthorized practice of law on more than one occasion and in more than one client matter. Furthermore, he neglected his clients’ legal matters, failed to communicate with his clients, failed to refund unearned legal fees, engaged in conduct that is a conflict of interest, converted client funds, and failed to cooperate with the ODC in its investigation. This court cannot and will not tolerate such conduct by an attorney, upon whom high standards of honesty and righteousness are erected. See Louisiana State Bar Ass’n v. Haylon, 250 La. 651, 198 So.2d 891, 892 (1967). Because respondent does not possess the requisite moral fitness to practice law in this state, he must be permanently disbarred.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that the name of David Allan Hilburn be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. Respondent is ordered to make restitution to his clients and to injured third parties. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Respondent has been disbarred since June 18, 1999. In re: Hilburn, 99-1039 (La.6/18/99), 737 So.2d 27.

. Mrs. Galbreath, who died on September 15, 1998, is one of the clients subject of Count II of the formal charges in 99-DB-027.

. According to the ODC's investigators, one of the heirs confronted respondent about the suspension of his law license. Respondent informed his clients that the suspension was "a misunderstanding” and that "a Supreme Court Justice would re-instate his license the following Monday.”

. The only asset of the succession was a checking account.

. According to Ms. Hopper’s complaint, the City Marshall called respondent away and discussed the situation with him privately. Shortly afterwards, respondent returned to the courtroom and told his clients that he "did not practice this type of law anymore and was working for a corporation,” and that he "had been paged and would need to leave.” Respondent assured his clients that "everything was arranged” and that they could "go in front of the judge with no worries.”

. In 99-DB-027, the hearing committee inadvertently included a finding that respondent violated Rule 8.1(b) (knowing failure to respond to a lawful demand for information from a disciplinary authority) of the Rules of Professional Conduct, though such a violation was not charged in the formal charges. In addition, the disciplinary board declined to find that respondent failed to return an unearned fee in Count I of 99-DB-027, citing a lack of evidence that Ms. Aucoin paid a $500 fee to respondent.

. Respondent was disbarred by this court in 1999 for various knowing and intentional misconduct, including neglect of legal matters, conversion of client and third-party funds, and failure to provide restitution. In re: Hilhurn, 99-1039 (La.6/18/99), 737 So.2d 27. At the time the order of disbarment was entered, respondent was then suspended from the practice of law for a period of one year and one day for misappropriating funds from the Bossier Parish Bar Association while acting as its treasurer. In re: Hilburn, 98-0288 (La.5/29/98), 715 So.2d 395. In addition, respondent was admonished by the disciplinary board in 1996 (96-ADB-050) and 1997 (97-ADB-031) for failing to cooperate in disciplinary investigations.

. Supreme Court Rule XIX, § 10(A) was amended to add the highlighted language:
(1) Disbarment by the court. In any order or judgment of the court in which a lawyer is disbarred, the court retains the discretion to permanently disbar the lawyer and permanently prohibit any such lawyer from being readmitted to the practice of law.

. Supreme Court Rule XIX, § 24(A) was amended to add the highlighted language:
A disbarred lawyer or a suspended lawyer who has served a suspension period of more than one year, exclusive of any waivers or periods of deferral, shall be reinstated or readmitted only upon order of the court.... No lawyer may petition for readmission until five years after the effective date of disbarment. A lawyer who has been placed on interim suspension and is then disbarred for the same misconduct that was the ground for the interim suspension may petition for readmission at the expiration of five years from the time of the effective date of the interim suspension. The court retains the discretion, in accordance with Section 10A of this rule, to permanently disbar a lawyer and permanently prohibit any such lawyer from being readmitted to the practice of law.