ATTORNEY DISCIPLINARY PROCEEDINGS
J1PER CURIAM. *
This attorney disciplinary proceeding arises from fifteen counts of formal charges instituted by the Office of Disciplinary Counsel (“ODC”) against respondent, David Fer-gurson, Sr., an attorney licensed to practice law in the State of Louisiana. The charges allege violations of Rules 1.3 (lack of due diligence), 1.4(a) (failure to keep client reasonably informed), 1.4(b) (failure to comply with reasonable requests for information), 1.5(a) (charging an unreasonable and unearned fee), 1.5(f)(3) (failure to render periodic accounting), 1.15(a) (commingling of client funds with the attorney’s funds), 1.15(b) (failure to protect the interests of a third party in settlement proceeds), 5.5(a) (engaging in the unauthorized practice of law), 8.1(a) (making false statements in a disciplinary matter), 8.1(b) (knowing failure to respond to a lawful demand for information from a disciplinary authority), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violating the Rules of Professional Conduct), 8.4(b) (engaging in criminal acts adversely reflecting on a lawyer’s honesty), 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud or misrepresentation), 8.4(d) (engaging in conduct prejudicial to the administration of justice), and 8.4(g) (failure to cooperate with the ODC) of the Rules of Professional Conduct.
UNDERLYING FACTS

Count I

Respondent settled personal injury cases on behalf of five clients. Upon disbursing to the clients their respective shares of settlement proceeds, respondent withheld sums owed to the Back & Neck Clinic of Louisiana for services rendered to the clients, an amount which collectively totaled $7,613. Despite repeated requests, respondent failed to pay the clinic and converted the funds to his own use.

\2C0unt II

Respondent settled a personal injury claim on behalf of Edward and Shirley Matthews. Respondent withheld $3,312.50 to pay three health care providers for services rendered to his clients, and issued separate checks from his client trust account payable to each provider for the respective amounts owed. All three cheeks were returned for insufficient funds.
The Matthews eventually paid all of the bills with their own funds. Respondent never provided restitution.

Count III

Margaret Sterling retained respondent to represent her in a personal injury matter. During the course of the representation, respondent failed and refused to return telephone calls and failed to keep his client informed of the status of her case.

*430
Count IV

Charlie Amos hired respondent to represent him in a criminal matter pending in West Baton Rouge Parish, and paid respondent the sum of $1,000. Respondent failed to appear in court or take any action on behalf of his client. Respondent failed to account for or return the unearned fee.

Count V

Respondent was appointed to represent Tyronne Clofer in a federal civil action. Thereafter, respondent did not communicate with his client and failed to appear on three occasions for pre-trial conferences. The trial court sanctioned respondent $100, and ultimately dismissed the plaintiffs cause of action with prejudice.

Count VI

Yvonne Lundy retained respondent to represent her and her son in connection with a suit for damages arising out of a vehicular accident. During the course of the representation,j[^espondent failed to communicate with his clients or keep them informed. Without receiving authority from his clients, respondent approved additional repairs to the damaged automobile. Subsequently, he received settlement funds in connection with the property damage claim, but failed to pay the automobile repair bill out of the settlement funds, resulting in the car being held by the repair shop. Later, Ms. Lundy terminated respondent’s representation, but respondent failed to provide an accounting.

Count VII

Norman Mills, Jr. retained respondent for a $500 fee to pursue a property damage claim. Respondent failed to take any action on behalf of his client, or communicate with his client regarding the status of the case. As a result, Mr. Mills’ claim prescribed.

Count VIII

Respondent was retained to represent Shirley Smith Foster and her family in connection with an automobile accident. Respondent settled the case in November 1995, and withheld $5,455 for payment of medical bills owed to third party health care providers. The third parties were never paid, and the funds were converted to respondent’s own use. Ms. Foster’s bills were turned over to a collection agency, and she was subsequently denied credit based upon her poor credit report.

Count IX

Cheryl A. Crain retained respondent to represent her in a personal injury matter. After the matter was settled, respondent retained the sum of $1,290.00 to pay Dr. J.D. Warren for medical services rendered to Ms. Crain. However, respondent failed to pay these expenses, and converted the funds to his own use.

Count X

Respondent represented Clarence and Angel Douglas in connection with two separate personal injury claims. Both cases settled, and respondent withheld the sums of $3,964 and $3,499, [ Respectively, from the settlements in order to pay the outstanding medical lien of the Baton Rouge Physical Therapy Clinic. However, respondent failed to pay the clinic and converted the funds to his own use.

Count XI

L.D. Sledge, a Baton Rouge attorney, represented a client in connection with a personal injury matter. After Mr. Sledge successfully negotiated a $10,000 settlement, the client terminated Mr. Sledge’s representation and retained respondent. Respondent agreed to remit the sum of $2,833.33 in fees and expenses to Mr. Sledge once he had his client execute the settlement draft and release documents. Based on these representations, Mr. Sledge endorsed the settlement cheek and returned it to respondent. However, respondent failed to remit these funds and converted them to his own use.

Count XII

Rayfield Wilson retained respondent to represent him, and paid a fee of $600. Respondent failed to communicate with Mr. Wilson or take any actions on his behalf. *431 Respondent also forged Mr. Wilson’s name on a payroll cheek in order to collect his attorney’s fee, having done so without prior authorization or approval of the client.[1]

Count XIII

Respondent represented Maia Magee and Coral Dunn in a personal injury matter. Upon settlement, respondent withheld funds from the respective settlements in the amount of $875 and $625 for services rendered by Dr. Stan Mays. Respondent failed to make these payments and converted the funds to his own use.

\ ¡Count XIV

In June 1996, Geraldine Davis retained respondent in a domestic matter and paid him an initial fee of $247. Subsequently, respondent failed to take any action on his client’s behalf and failed to return her telephone calls.

Count XV

From September 6, 1995 until January 9, 1997, respondent was ineligible to practice law in the State of Louisiana for having failed to pay bar dues and disciplinary assessments, but nonetheless continued to engage in the active practice of law.
DISCIPLINARY PROCEEDINGS
Prior to the filing of formal charges, respondent and the ODC filed a joint motion seeking to place respondent on interim suspension. This court granted the motion, suspending respondent from the practice of law effective April 1, 1997. In Re Fergurson, 97-0593 (La.3/27/97), 691 So.2d 674.
The ODC then instituted formal charges against respondent. He failed to file an answer to the charges. As a result, pursuant to Supreme Court Rule XIX §§ 11(e)(3), no formal hearing was held, but the parties were allowed to present documentary evidence on the issue of sanctions. The ODC submitted its evidence and sought disbarment. Respondent failed to present any evidence.

Hearing Committee Recommendation

The committee found respondent commingled and converted client funds over a period of five years, in at least thirteen separate cases. While recognizing respondent attributed his problems to the fact his bank stopped payment on a large deposit and then failed to honor cheeks disbursed to clients,[2] the committee concluded that there was no evidence respondent had made any disbursements to his clients at the time the deposit was returned. Moreover, it noted there were negative balances on numerous occasions in the account before and after the deposit. The committee |6further found respondent never made restitution to his victims, and determined the misconduct relating to the commingling and conversion of funds was knowing and intentional. The committee also concluded respondent knowingly neglected his clients’ cases and failed to communicate with them. In all respects, it determined respondent’s actions caused actual and potential serious injury to the clients.
Relying on the ABA Standards for Imposing Lawyer Sanctions[3] and Louisiana State Bar Association v. Hinrichs, 486 So.2d 116 (La.1986), the hearing committee determined the baseline sanction was disbarment. The *432 committee did not recognize any factors in mitigation, but found the following aggravating factors: pattern of misconduct, dishonest or selfish motive, multiple offenses, bad faith obstruction of a disciplinary proceeding by intentionally failing to comply with ODC’s requests for information and by making false responses in depositions, refusal to acknowledge the wrongful nature of his conduct, vulnerability of the victims and indifference to making restitution. Accordingly, the committee recommended disbarment.

Disciplinary Board Recommendation

The disciplinary board concurred in the findings of the hearing committee that respondent violated the rules as charged, and breached duties owed to the legal system, the profession, and the public. It concluded respondent’s conduct was knowing and intentional. In addition to the aggravating factors found by the committee, it further recognized the presence of the following additional factors: prior disciplinary record[4] and substantial experience in the practice of law (admitted in 1987). The board also found two mitigating factors present: (1) personal and emotional problems, and (2) delay in the disciplinary proceedings as it related to one count of misconduct.[5] However, the board concluded the aggravating factors far outweighed the mitigating 17factors. Accordingly, the board recommended respondent be disbarred from practice, effective from the date of his interim suspension.
Neither respondent nor the ODC filed an objection in this court to the recommendation of the disciplinary board.
DISCUSSION
The record demonstrates in a convincing fashion that respondent lacks the moral fitness to practice law. In addition to neglecting his clients’ cases and failing to communicate with his clients, respondent commingled and converted client funds on numerous occasions over a period of several years. He made no attempt to reimburse his clients, and his conduct caused potential and actual harm. Under the guidelines set forth in Hinrichs, this conduct alone would support the imposition of disbarment. Accordingly, the only appropriate sanction in this case is disbarment.
DECREE
Upon review of the findings and recommendation of the hearing committee and disciplinary board, and considering the record, it is ordered that the name of David Fergur-son, Sr. be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked, retroactive to the date of his interim suspension on April 1, 1997. All costs in this matter are assessed against respondent with legal interest to commence thirty days from the date of the finality of this court’s judgment until paid.

 Marcus, J. not on panel. Rule IV, Part II, § 3.

. The hearing committee found Mr. Wilson stated he paid $600 to respondent via his payroll check. While Mr. Wilson stated he never endorsed or gave anyone permission to endorse his payroll check, the committee determined the only conclusion that could be drawn was that Mr. Wilson’s intent was to pay the funds to respondent.

. In depositions taken by the ODC, respondent explained that his failure to pay client medical bills was due to "a problem with the [trust] account” stemming from Whitney Bank’s stop payment on a $27,000 deposit. He claimed to have disbursed $9,000 of these funds to his clients prior to the return of the deposited check.

.ABA Standard 4.11 provides ”[d]isbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client.” Standard 4.41 provides “[djisbarment is generally appropriate when (b) a lawyer knowingly fails to perforin services for a client and causes serious or potentially serious injury to a client; or (c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.”

. Respondent’s prior disciplinary record consists of two prior admonitions issued on September 1, 1994 and September 24, 1995 for failure to cooperate by not responding to a complaint.

. The board found the excessive delay in the ■ disciplinary proceedings with respect to Count II only. The Matthews filed their initial complaint with the ODC on December 1, 1993. A subpoena was not issued for respondent's bank records until November 11, 1995, two years later. The formal charge relating to the Matthews’ complaint was combined with fourteen charges of misconduct stemming from complaints filed in 1996 and 1997. Formal charges were filed on May 2, 1997, three and one-half years after the Matthews’ initial complaint was filed.