742 So.2d 544 (1999)
In re Frank P. LETELLIER, II.
No. 98-B-2646.
Supreme Court of Louisiana.
September 8, 1999.
Rehearing Denied October 8, 1999.
Charles B. Plattsmier, Baton Rouge, for Applicant.
Frank P. Letellier, III, Anthony C. D'Antonio, Metairie, for Respondent.

LAWYER DISCIPLINARY PROCEEDINGS
TRAYLOR, Justice.[*]
This attorney disciplinary proceeding arises from two counts of formal charges instituted by the Office of Disciplinary Counsel (ODC) against Respondent, Frank P. Letellier, II, an attorney licensed to practice law in the State of Louisiana.

FACTS
Respondent, Frank P. Letellier, II, is a practicing attorney in Metairie, Louisiana. The instant proceedings stem from an approximately ten-year attorney-client relationship between Respondent and Hollis H. Derby. Respondent obtained a general power of attorney that allowed him to act for and on behalf of Derby, an elderly man with a history of psychiatric problems, from September 21, 1987 until Derby's demise in 1997. On November 10, 1987, Respondent perfected a settlement agreement in which Moran Development Corporation paid Derby $150,000 on a defaulted note and agreed to pay Derby monthly installments of $860.52 over a sixty-month period. Respondent invoiced the settlement amount of $192,500 and billed Derby a 10% fee, or $19,250, based upon that figure. However, the transaction accounting *545 records indicate that $186,141.84 was received. The difference of $6,358.16 was not justified in Respondent's records but Respondent nevertheless included this additional amount in his fee calculation.
In March of 1987, a few months prior to obtaining power of attorney of behalf of Derby, Respondent formed Doro, Inc., and personally secured funding for the company. Respondent held a 100% ownership of Doro, Inc., but later transferred ownership to his bookkeeper. He acted as president, secretary-treasurer, and sole director of Doro, Inc., and until 1995, was the registered agent for the company. On September 22, 1988, Respondent loaned $31,000 of Derby's funds to Doro, Inc., payable in ten years later with no interest or security. Loans under identical terms were issued on September 7, 1989, for $10,000, on January 16, 1990, for $27,000, and on January 15, 1991, for $15,000. During the period of 1988 through 1993, Respondent earned $10,800 in fees for managing Derby's finances.
On July 8, 1992, Brobson Lutz, M.D., Director of Health for the City of New Orleans, filed a complaint with the ODC against Respondent in connection with his representation of Derby.[1] The complaint was lodged following Lutz's investigation of a report made to the City Health Department that Derby was wandering his neighborhood, begging for food, and rummaging through trash cans. Dr. Lutz visited Derby's home where he found "conditions that were unfit for human habitation." The complaint was additionally prompted by the airing of a national television exposé on the topic of elderly abused by their children. The exposé focused on Derby's living conditions in his uptown New Orleans home, which contained human excrement in every room, non-working sewerage, and multiple fire code violations due to an abundance of dilapidated furniture and trash. A video tape of the newscast was entered into evidence.[2]
The ODC conducted an investigation of the complaint. Respondent failed to cooperate with the ODC investigation of the matter involving Mr. Derby, failed to appear pursuant to a subpoena, and provided misleading and false statements to the ODC regarding his knowledge of, involvement with, and business purposes of Doro, Inc.
Letellier provided an accounting that indicated he received the $150,000 partial payment from Moran Development in November of 1987, as well as subsequent monthly installments, but he failed to segregate the funds from his own, failed to invest the funds in an interest-bearing account, made unauthorized expenditures and disbursements to the detriment of Derby, failed to furnish a proper accounting regarding the funds, and used Derby's funds without his permission to make loans totaling approximately $76,594 to Doro, Inc., a company Respondent once wholly owned and for which he remained the registered agent. As of the date of the filing of formal charges, Letellier had not furnished Derby all sums owed to him.[3]

DISCIPLINARY PROCEEDINGS

Formal Charges
On August 22, 1996, the ODC filed two counts of formal charges against Respondent. The first count involves the mismanagement of client funds in violation of the Rules of Professional Conduct 1.8 (conflict *546 of interest: prohibited transactions), 1.15(a) (commingling of client funds with attorney's funds), 1.15(b) (failure to protect the interests of a third party in settlement proceeds), 1.15(d) (failure to maintain a client interest bearing trust account), 8.4(a) (violating the Rules of Professional Conduct), and 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation). The second count involves failure to cooperate with the ODC and providing false and misleading information in the ODC investigation of this matter, in violation of the Rules of Professional Conduct 8.1(a) (knowingly making a false statement of material fact in connection with disciplinary matter), and 8.4(g) (failure to cooperate with the ODC). Respondent filed an answer denying any misconduct and filed numerous motions.
A formal hearing commenced on April 11, 1997, and was continued and concluded on November 5, 1997.

Hearing Committee Report
With regard to Count I, the hearing committee found by clear and convincing evidence that Respondent commingled and converted client funds by failing to establish a trust account for Mr. Derby; neglected to act as a prudent conservator of Derby's funds by failing to invest them in interest bearing accounts and by lending them to Doro, Inc. without security and spending them without adequate documentation or authorization; and failed to provide Derby with a proper trust accounting for over ten years; an engaged in a prohibited conflict of interest without a written waiver. As to Count II, the hearing committee found by clear and convincing evidence that Respondent failed to cooperate with the ODC.[4]
Based upon these findings, the hearing committee determined that Respondent violated Rules 1.8; 1.15(a), (b), and (d); 8.1, and 8.4 as charged. Relying on Sections 4.11, 4.31 and 4.61 of the American Bar Associations Standards for Imposing Lawyer Sanctions, the hearing committee determined that the baseline sanction was disbarment.[5] The hearing committee noted one mitigating factor[6] and several aggravating factors[7] and recommended that Respondent be disbarred from the practice of law.

Disciplinary Board Report
The disciplinary board issued a report stating that it concurred with the majority of the findings of the hearing committee.[8] *547 However, the disciplinary board recommended that Respondent be suspended for a period of two years.
Respondent initially filed a response indicating that he intended to follow the disciplinary board's recommendation of a two year suspension. The ODC did not file an objection to the disciplinary board recommendation. On January 6, 1998, this court ordered briefing and oral argument in this matter pursuant to Supreme Court Rule XIX, § 11G(1)(a).
Respondent now argues that the charges filed against him were made under the selfish motivation of the Complainant. He claims there is no evidence that Mr. Derby was incompetent and that he did not violate any rule of professional conduct in fulfilling the eccentric requests of Mr. Derby, who was a "lucid and self-determinative" individual. Regarding the allegations of mismanagement of client funds, Respondent claims Rule 1.15(a) does not require a separate account for each client as suggested by the disciplinary board. Furthermore, Respondent claims that there is no evidence that he had an ownership interest in Doro, Inc., and asserts that he provided Mr. Derby with $12,000 of his own funds when the trust fund was exhausted. Respondent contends the two-year proposed sanction of the disciplinary board is too severe. Finally, Respondent argued in oral arguments before this court that he was not acting under the power of attorney nor as legal counsel for Derby in the transactions at issue. Therefore, Respondent requests that he receive a sanction of additional continuing legal education and, at most, be subject to a public reprimand for his misconduct.
While the ODC did not initially object to the disciplinary board's proposed two-year sanction, it now joins the hearing committee and seeks disbarment of the Respondent.

DISCUSSION
In the instant case, ODC has proven by clear and convincing evidence that Respondent commingled Derby's funds with his own funds. He failed to maintain a proper trust accounting. In addition, the loan transactions between Doro, Inc. and Derby were not fair and reasonable to the client because a significant amount of Derby's funds were used to make unsecured, interest-free loans to a corporation in which Respondent retained a significant interest. Respondent intentionally exploited his attorney-client relationship with Derby by entering into business transactions on terms that were unfair and unreasonable and on which Derby did not have the benefit of a review by independent counsel.
Furthermore, Respondent failed to cooperate with the ODC investigation of the matter involving Mr. Derby, failed to appear pursuant to a subpoena, provided misleading and false statements to the ODC regarding his knowledge of, involvement with, and business purposes of Doro, Inc.
We reject the argument that Respondent was acting under the power of attorney and not as legal counsel for Derby. First, respondent acted in the capacity of an attorney when he perfected the settlement agreement and collected funds from Moran Development Corporation and Doro, Inc. These were legal services for which Respondent received a fee. In addition, Respondent admittedly commingled Derby's funds with other client and family funds. Although respondent performed services for Derby outside the context of the attorney-client relationship, this relationship continued and at no time did it terminate. The existence of an attorney-client relationship turns not only on continuous contacts involving advice or service, but also on the client's subjective belief that such a relationship exists.[9]Lima v. *548 Schmidt, 595 So.2d 624, 630 (La.1992); Perez v. Shook, 97-0420 (La.App. 4 Cir. 12/3/97); 703 So.2d 821, 826; Louisiana State Bar Ass'n v. Bosworth, 481 So.2d 567, 571 (La.1986).
This court set forth general guidelines for evaluating disciplinary matters concerning commingling and conversion of client funds in Louisiana State Bar Ass'n v. Hinrichs, 486 So.2d 116, 122-23 (La. 1986). Under Hinrichs, disbarment is appropriate where any of the following elements are present: the lawyer acts in bad faith and intends a result inconsistent with his client's interest; the lawyer commits forgery or other fraudulent acts in connection with the violation; the magnitude or the duration of the deprivation is extensive; the magnitude of the damage or risk of damage, expense, and inconvenience caused the client is great; the lawyer either fails to make full restitution or does so tardily after extended pressure of disciplinary or legal proceedings. Id. at 122; In re: Gambel, 99-0521 (La.3/26/99); 733 So.2d 1180; In re: Fallin, 99-0424 (La.3/19/99); 731 So.2d 221; In re: Shields, 99-0439 (La.3/19/99); 731 So.2d 223; In re: Fergurson, 98-2591 (La.12/18/98); 730 So.2d 429. This court has frequently ordered disbarment for the intentional commingling and converting of funds coupled with the existence of any of the above-listed aggravating factors. In re: Aime, 95-0284 (La.4/21/95); 653 So.2d 1173; In re: Smith, 98-0619, 98-0620 (La.5/8/98); 710 So.2d 241.
We find many of the Hinrichs aggravating factors present in the instant case, but most egregious is the fact that Respondent took advantage of an obviously vulnerable victim. We view Derby's age, history of psychological problems, slovenly demeanor and living conditions, and the news video footage of his home to be consistent with reports that Derby was unable to care for either himself or his financial affairs. Upon review of the findings and recommendation of the hearing committee and disciplinary board and considering the record, briefs, and oral arguments, we conclude that the disbarment recommended by the hearing committee and ODC is appropriate.

DECREE
Accordingly, it is ordered that the name of Frank P. Letellier, II, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. It is further ordered that Respondent make full restitution with legal interest. All costs and expenses of these proceedings are assessed to Respondent in accordance with Supreme Court Rule XIX, § 10.1.
MARCUS, J., dissents and assigns reasons.
LEMMON, J., dissents in part and assigns reasons.
MARCUS, Justice (dissenting).
I agree with the recommendation of the Disciplinary Board that respondent be suspended for a period of two years. The Office of Disciplinary Counsel did not initially object to this recommendation. Accordingly, I respectfully dissent.
LEMMON, J., Dissenting in Part.
I would impose the two-year suspension recommended by the Disciplinary Board. That was the penalty imposed in In re Levingston, 96-1379 (La.12/6/96), 685 So.2d 105, which was factual similar to the present case. I agree with the Board's report that demonstrated the insufficiency of the Hearing Committee's reasons for distinguishing this case from Levingston. Moreover, Levingston had a prior disciplinary record, while respondent has a completely spotless record in practice since 1967. Finally, as noted by the *549 Board, respondent expended his own personal funds to care for Derby after Derby's money ran out.
Not all of the misconduct outlined in the majority opinion was established by clear and convincing evidence, and that misconduct which was established does not warrant more than the two-year suspension recommended by Board and not objected to by Disciplinary Counsel.
NOTES
[*] Calogero, C. J., not on panel. See Rule IV, Part 2, § 3.
[1] Although the ODC initially dismissed the complaint, Dr. Lutz appealed the dismissal to the disciplinary board, who remanded the matter to the ODC for further investigation and the filing of formal charges.
[2] The hearing committee admitted the tape subject to Respondent's objection. Because there is testimony describing Derby's deplorable living conditions, any error in admitting the tape is harmless.
[3] Because of Respondent's failure to produce the requested financial records, the court is unable to determine the precise amount of restitution owed to Derby's estate.
[4] The Hearing Committee also found the following ABA Standards for Imposing Lawyer Sanctions Standard 9.22 aggravating circumstances: (b) dishonest or selfish motive; (d) multiple offenses; (e) obstruction of the disciplinary process; (f) submission of false evidence or other deceptive practices during the disciplinary process; (g) refusal to acknowledge the wrongful nature of his conduct; (h) vulnerability of the victim, given Derby's age and mental condition; and (i) substantial experience in the practice of law.
[5] Under the ABA Standards for Imposing Lawyer Discipline, disbarment is generally appropriate when a lawyer: knowingly converts client property and causes injury or potential injury to a client, § 4.11; without the informed consent of the client engages in representation of a client knowing that the lawyer's interests are adverse to the client's with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to the client, § 4.31(a); knowingly deceives a client with the intent to benefit the lawyer or another, and causes serious injury or potentially serious injury to a client, § 4.61.
[6] The mitigating factor was the lack of a prior disciplinary record.
[7] Aggravating factors included: dishonest of selfish motive, multiple offenses, obstruction of the disciplinary process, submission of false evidence of other deceptive practices during the disciplinary process, refusal to acknowledge wrongful nature of conduct, vulnerability of the victim, and substantial experience in the practice of law. The hearing committee was influenced by Respondent's prior felony conviction for similar misconduct.
[8] The disciplinary board found Respondent failed to keep Derby's funds safe by making interest-free loans to Doro, Inc., failed to segregate Derby's funds into a separate trust account, failed to keep accurate records of those funds, violated his duty to Derby, causing him actual harm, and engaged in knowing misconduct.
[9] Significantly, in the summer of 1992 Derby told a crisis intervention specialist with the City Health Department that Respondent was his attorney. Respondent subsequently represented Derby during a hearing at the health department regarding housing violations.