*332 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
| t This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Vincent C. Cofield, an attorney licensed to practice law in Louisiana but currently on interim suspension. In re: Cofield, 04-0033, 04-0558 (La.3/23/04), 869 So.2d 784.
UNDERLYING FACTS AND PROCEDURAL HISTORY
The ODC filed three sets of formal charges against respondent. The first set, bearing the disciplinary board’s docket number 02-DB-018, was filed on February 14, 2002 and consists of two counts of misconduct. The second set, bearing the disciplinary board’s docket number 03-DB-056, was filed on August 25, 2003 and consists of one count of misconduct. The third set, bearing the disciplinary board’s docket number 03-DB-083, was filed on December 12, 2003 and consists of two counts of misconduct.
The three sets of formal charges were considered by separate hearing committees. By order of the disciplinary board dated August 13, 2004, the three matters were consolidated. On March 10, 2006, the board filed in this court a single recommendation of discipline encompassing all three sets of formal charges.

J£2-DB-018

Count I — The Davis Trust Matter
In January 1986, Keith Davis, then a minor, received a substantial monetary award for injuries he sustained in a car accident. Apparently, the money was invested in a brokerage account. Mr. Davis’ mother, Altonette Jones, handled her son’s affairs until he turned eighteen, at which time Mr. Davis took over the handling of his money and apparently began spending an excessive amount.
On February 6, 1998, respondent prepared, and Mr. Davis executed, a full power of attorney giving Ms. Jones power of attorney over the affairs of her “disabled and spendthrift” son. In March 1999, Ms. Jones requested that respondent set up a trust for her son naming her as the trustee. On March 25, 1999, respondent pre *333 pared and executed an irrevocable trust designating himself as trustee over Mr. Davis’ property, including $350,756.62 invested in a trust account with Edward Jones Company.
Between August 23, 1999 and September 29, 1999, respondent made cash advances, totaling $4,650, to Mr. Davis from respondent’s personal funds. On September 2, 1999, respondent prepared and executed a line of credit promissory note in the amount of $50,000, listing himself as borrower and Mr. Davis as lender. On October 4,1999, respondent issued a check from Mr. Davis’ trust account made payable to cash in the amount of $14,000, which respondent then endorsed and cashed. Respondent retained $7,000 for himself as a personal loan from Mr. Davis and apparently paid back a portion of this loan by deducting the $4,650 in cash advances he had provided to Mr. Davis. Respondent held the other $7,000 to be Isdistributed to Mr. Davis in the future. Thereafter, he provided Mr. Davis with numerous advances from the $7,000 he was holding.[1]
When Ms. Jones learned of the $14,000 check and failed to obtain an explanation from respondent as to its purpose, she hired attorney William Crews to file a lawsuit against respondent on behalf of herself and her son. Altonette Davis Jones and Keith Glendrell Davis v. Vincent C. Cofield, No. 71829, on the docket of the Tenth Judicial District Court, filed on November 12, 1999. On or about November 7, 1999, just prior to the filing of the lawsuit, respondent prepared, and Mr. Davis executed, a revocation of power of attorney, revoking Ms. Jones’ power of attorney over her son’s affairs. On or about November 14, 1999, respondent prepared, and Mr. Davis executed, a statement to Mr. Crews wherein Mr. Davis terminated the services of Mr. Crews and also directed that the lawsuit against respondent be terminated.[2] On or about November 23, 1999, respondent prepared, and Mr. Davis executed, a joint motion to dismiss the lawsuit against respondent, despite the' fact that Mr. Davis was still represented by Mr. Crews. Thereafter, respondent filed the joint motion to dismiss into the court record. At a hearing on March 8, 2000, the judge denied the joint motion to dismiss, stating the following:
Initially the Court will note that this is an unusual proceeding. There is a Joint Motion to Dismiss with Prejudice that was filed into the suit record on November 23, 1999. This Joint Motion to Dismiss was filed after the Court had ordered Mr. Cofield and other parties to have no contact with and to file no other pleadings in this matter. The Court feels that Mr. Keith Davis has some mental disability resulting from his injuries sustained when he was a small child. The Court spoke with Mr. Davis at a previous hearing at the request of all counsel and Mr. Davis advised the Court that it was not his intent to dismiss | ¿his suit in this matter. The Court will deny the Joint Motion to Dismiss.
By judgment dated April 24, 2000, respondent was removed as trustee of Mr. Davis’ trust and Morris Reid, Sr., Mr. Davis’ grandfather, was appointed trustee. By this time, the trust account had an approximate balance of $91,000.[3]
*334 The ODC alleged that respondent’s conduct in this matter violated Rules 1.1(a) (failure to provide competent representation to a client), 1.4 (failure to communicate with a client), 1.8 (engaging in prohibited transactions with a client), 1.14 (client under a disability), 1.15(a) (safekeeping property of clients or third persons), 1.16 (declining or terminating a representation), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.
Count II — The Stills Matter
In January 2000, Mike and Brenda Stills requested arbitration of a fee dispute with respondent through the Alternative Dispute Resolution Program provided by the Louisiana State Bar Association (“LSBA”). While respondent initially agreed to arbitration, in March 2000, he attempted to withdraw his consent. His request to withdraw was rejected, and arbitration proceeded. On June 21, 2000, the arbitrator awarded respondent $1,000 in fees but found that he owed the Stills $1,200 of the fee they had paid him.[4]
|sOn August 7, 2000, respondent requested that the LSBA provide him an additional 120 days to refund the $1,200 because he was having medical and financial problems. Eventually, the matter was forwarded to the ODC. In May 2001, respondent informed the Stills as well as the ODC that he was unable to pay the $1,200 and would be including the debt in his petition for bankruptcy.
The ODC alleged that respondent’s conduct violated Rules 1.5(f)(6) (failure to refund an unearned fee), 1.15(c) (safekeeping property of clients or third parties), 1.16(d) (obligations upon termination of the representation), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a), 8.4(c), 8.4(d), and 8.4(g) (failure to cooperate with the ODC in its investigation) of the Rules of Professional Conduct.
Respondent answered the formal charges, denying the allegations of misconduct.

Formal Hearing

This matter proceeded to a formal hearing on the merits. Both respondent and the ODC introduced documentary evidence. The ODC called Ms. Jones, Mr. Davis, and Mr. Crews to testify before the committee. Respondent testified on his own behalf and was cross-examined by the ODC. The parties also filed a joint stipulation, agreeing to the following facts:
1) Respondent borrowed funds from Mr. Davis’ trust in the amount of $7,000;
2) Between August 23, 1999 and September 29, 1999, respondent made cash advances of approximately $4,650 from his personal funds to Mr. Davis;
|fi3) On October 4, 1999, respondent issued a check from Mr. Davis’ trust account, payable to cash in the *335 amount of $14,000. Thereafter, he endorsed same for cashing, and pursuant to an agreement with Mr. Davis, retained $7,000 as a personal loan and held the rest for regular disbursements to Mr. Davis;
4) Respondent had in his files a line of credit document in the amount of $50,000 in favor of himself;
5) Between October 1, 1999 and November 1, 1999, respondent continued to advance funds to Mr. Davis from Mr. Davis’ funds in respondent’s possession;
6) On or about November 14, 1999, at Mr. Davis’ request, respondent prepared a letter for Mr. Davis that notified Mr. Crews of his desire to terminate the relationship;
7) On or about November 23, 1999, Mr. Davis and respondent filed a joint motion to dismiss with prejudice Mr. Davis’ lawsuit against respondent;
8) By consent of Mr. Davis and respondent, an order was signed by the Tenth Judicial District Court removing respondent as trustee; and
9) Respondent has not paid any funds to the Stills pursuant to an arbitration award arising out of a fee dispute.

Hearing Committee Recommendation

After reviewing the testimony and evidence presented at the hearing, the hearing committee determined that respondent’s testimony was “inconsistent and largely unbelievable.” The committee then made factual findings as follows:
Count I:
1) In 1998, respondent assumed the representation of Mr. Davis in several legal matters.
|72) Mr. Davis has, and at all material times had, a mental impairment that obviously rendered him incapable of participating in the decision-making process regarding his representation.
3) On February 6,1998, respondent prepared and caused to be executed a full power of attorney giving Ms. Jones power of attorney over Mr. Davis’ affairs.
4) On March 25, 1999, respondent prepared and caused to be executed a declaration of irrevocable trust designating himself as trustee of Mr. Davis’ property as well as his assets, which assets consisted of cash deposits with Edward Jones.
5) From August 23, 1999 to September 29, 1999, respondent made cash advances from his personal funds to Mr. Davis of approximately $4,650.
6) On September 2, 1999, respondent prepared and caused to be executed a line of credit promissory note in the amount of $50,000 from Mr. Davis to respondent for respondent’s own use and benefit; however, there is no evidence that any funds were advanced to respondent under this contract.
7) On October 4, 1999, respondent issued a check from Mr. Davis’ trust account payable to cash in the amount of $14,000, which respondent endorsed and cashed, retaining $7,000 as a personal loan from Mr. Davis and retaining $4,650 as reimbursement for the prior cash advances to Mr. Davis; the remaining funds were maintained by respondent to satisfy Mr. Davis’ future requests for cash.
8) There is no evidence that the $7,000 loan has been repaid.
9) On or about November 14, 1999, respondent prepared and caused, to be executed by Mr. Davis a statement wherein Mr. Davis purportedly terminated the services of Mr. Davis’ current attorney, Mr. Crews, in a pending lawsuit against respondent. *336 Respondent never contacted Mr. Crews.
| «10) On or about November 23, 1999, respondent prepared and caused to be executed by Mr. Davis a joint motion to dismiss the pending lawsuit; again, respondent never contacted Mr. Crews.
Count II:
1) On or about January 24, 2000, the Stills, on behalf of Carlton Taylor, sought arbitration of a fee dispute with respondent through the LSBA.
2) By decision dated June 21, 2000, respondent was awarded a total fee of $1,000 and ordered to refund $1,200 to the Stills.
3) Respondent failed to make the refund.
4) Respondent ultimately amended his pending bankruptcy petition to include the $1,200 owed to the Stills; the amount was ultimately discharged by the bankruptcy court.
Based on these findings, the committee determined that, in Count I, respondent violated Rules 1.1(a), 1.14, 1.15(a), 1.16, 8.4(a), 8.4(b),[5] and 8.4(c) of the Rules of Professional Conduct. Specifically, the committee found that respondent’s administration of the trust was grossly inadequate and he failed to comprehend the nature of his fiduciary duties. Respondent also continued to deal directly with Mr. Davis after it was known that he was incapable of handling his affairs and after Ms. Jones was granted power of attorney. Respondent further distributed funds to Mr. Davis from a safe in his office. Finally, respondent continued to act as counsel for Mr. Davis after another attorney was engaged by Mr. Davis to sue respondent; these acts were done in an effort to dismiss the lawsuit against respondent. In Count II, the committee determined that respondent violated Rule 1.5(f)(5) of the Rules of Professional Conduct.
|sThe committee found that respondent knowingly violated duties owed to his clients and as a professional. Relying upon the ABA’s Standards for Imposing Lawyer Sanctions, the committee determined that the baseline sanction is a period of suspension.
As aggravating factors, the committee recognized respondent’s prior disciplinary offenses,[6] a pattern of misconduct in Count I, and vulnerability, of the victim. The committee found no mitigating factors present.
Under these circumstances, the committee recommended that respondent be suspended from the practice of law for three years for his misconduct in Count I and be suspended from the practice of law for six months for his misconduct in Count II. The committee also recommended that the suspensions run concurrently and respondent be assessed with all costs and expenses of these proceedings.
One member of the committee filed a concurring opinion agreeing with the recommended sanction, but with respect to Count II, questioning “whether there is a legal basis to bring charges based on a punitive disciplinary award from a fee arbitration process.” Thereafter, the ODC filed an amendment to the formal charges, withdrawing the allegations set forth in Count II.
*337 Respondent filed an objection to the hearing committee’s report and recommendation.

03-DB-056

Respondent’s testimony at the formal hearing in 02-DB-018 indicated that he engaged in further misconduct in the Davis Trust matter. Specifically, respondent named himself trustee of Mr. Davis’ funds and undertook trastee responsibilities even |inthough he believed that Mr. Davis was capable of taking care of his own financial affairs. Respondent further advised Ms. Jones and Mr. Davis that the only way to protect Mr. Davis’ funds was for respondent to be the trustee. However, respondent did not possess or acquire training or knowledge in investments, financial management, or trust law.
Respondent retained Mr. Davis’ cash in his office safe and regularly disbursed the cash to Mr. Davis. Respondent also had Mr. Davis execute two promissory notes in the amount of $7,000 each to disguise the $14,000 withdrawal.
Furthermore, respondent advised Mr. Davis that he could get his houses repaired if he set up a line of credit for respondent’s use and benefit. As such, respondent had Mr. Davis execute a line of credit promissory note in the amount of $50,000 and kept the instrument in his file. Respondent also attempted to limit his liability for negligent management of the trust funds by providing for interest at the rate of 8% per annum.
Finally, respondent continued to have direct contact with Mr. Davis after he and his mother filed a lawsuit against respondent because of his actions as trustee. Respondent also had Mr. Davis examined by Dr. John Simoneaux after the lawsuit was filed. Furthermore, shortly before the hearing in 02-DB-018, respondent obtained an affidavit from Mr. Davis wherein respondent attempted to release himself from professional and fiduciary liability.
The ODC alleged that respondent’s conduct violated Rules 1.1(a), 1.2(a)(b) (scope of the representation), 1.5(b) (failure to have a clear fee agreement), 1.7 (engaging in a conflict of interest), 1.15(a), 1.16(a) (declining or terminating a representation), 2.1 (failure to properly advise a client), 2.2 (improperly acting as intermediary with clients), 3.4(b) (fairness to opposing party and counsel), 3.4(c) (knowing disobedience of an obligation under the rules of a tribunal), 4.1 In (truthfulness in statements to others), 4.2 (communication with a person represented by counsel), 4.3 (dealings with an unrepresented person), 8.4(a), 8.4(c), and 8.4(d) of the Rules of Professional Conduct.
Respondent answered the formal charges, denying the allegations of misconduct and additionally raising the defenses of prescription and res judicata.

Formal Hearing

This matter proceeded to a formal hearing on the merits, which was conducted by the hearing committee on December 3, 2003. The ODC introduced documentary evidence and called Ms. Jones, Mr. Davis, and respondent to testify before the committee.

Hearing Committee Recommendation

After considering the testimony and evidence presented at the hearing, the hearing committee dismissed respondent’s claim of prescription as without merit and, in regard to respondent’s exception of res judicata, determined that the instant allegations of misconduct are separate acts of misconduct from those in 02-DB-018.
Specifically, the committee found that, by his own admission, respondent was an alcoholic and drug addict and did not practice law between 1986 and approximately *338 1998. Furthermore, despite having no training, experience, or knowledge in fiscal management of estates, respondent undertook the trustee duties of Mr. Davis’ trust, which was valued at $350,756.62 in April 1999. The committee also found that Mr. Davis had significant physical and mental challenges that “prevented him from recognizing the peril” his trust was in by allowing respondent to act as trustee. Respondent further obtained $14,000 from Mr. Davis’ trust, took approximately $4,000 in reimbursements for unexplained advances to Mr. Davis, then | iaplaced the remaining $10,000 in his office safe. From the $10,000, he borrowed $7,000 and had Mr. Davis execute two promissory notes. The committee determined that Mr. Davis was an “exceptionally” vulnerable client whom respondent took advantage of to obtain funds from Mr. Davis’ trust, which was to Mr. Davis’ disadvantage. Finally, the committee found that respondent had direct contact with Mr. Davis after the lawsuit had been filed against respondent. He never informed his attorney nor Mr. Davis’ attorney of these repeated contacts with Mr. Davis. Respondent also had Mr. Davis examined by Dr. Simoneaux in order for Dr. Simoneaux to testify that Mr. Davis was mentally capable of handling his own affairs and thus capable of dismissing the lawsuit against respondent. Furthermore, respondent had Mr. Davis sign an affidavit in an attempt to release himself from professional and fiduciary liability for his mismanagement of Mr. Davis’ trust.
Based on these findings, the committee determined that respondent violated Rules 1.1(a), 1.8, and 1.15(a) of the Rules of Professional Conduct. However, the committee determined that the ODC failed to prove by clear and convincing evidence the allegations regarding the line of credit. Nevertheless, respondent’s misconduct was intentional.
The committee found the following aggravating factors to be present: prior disciplinary offenses, a dishonest or selfish motive, a pattern of misconduct (repeated contacts with Mr. Davis after he knew Mr. Davis was represented by counsel), refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, and indifference to rectifying the consequences of the misconduct. No mitigating factors were found by the committee.
Under these circumstances, the committee recommended that respondent be suspended from the practice of law for no less than three years. However, the committee also recognized that the instant misconduct occurred in the same time | iaframe and involved the same victim as the misconduct in 02-DB-018; thus, the sanction should be based on both proceedings.
Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.

03-DB-083

Count I — The McClinton Matter
In November 1999, Harold McClinton and his sister, Henri McClinton Smith, retained respondent to handle a legal malpractice matter against attorneys William Dyess and Edward Chevallier, paying him a fee of $3,000 plus 25% of any funds recovered. In October 2001, respondent settled the claim against Mr. Dyess for $20,000. On December 13, 2001, respondent deposited the settlement check into his trust account. On January 4, 2002, he issued a check from his trust account payable to Mr. McClinton in the amount of $7,500; however, the check was returned due to insufficient funds in April 2002.[7]
*339 On April 22, 2002, respondent forwarded Mr. McClinton a cashier’s check in the amount of $6,000. He also promised to pay within two weeks the $1,500 balance and $200 in interest. Respondent did not remit the $1,500 until September 11, 2002 and the $200 until February 7, 2003.[8]
Mr. McClinton and Ms. Smith also paid respondent $350 for a property appraisal, $250 for traveling expenses, $500 for an appeal, and $332 for a writ application to the Louisiana Supreme Court. However, respondent failed to provide 114Mr. McClin-ton with a requested accounting of these funds or requested copies of his work product or the court decisions.
Furthermore, respondent’s trust account balance fell below the amount owed to Mr. McClinton on various occasions following the deposit of the settlement check. Additionally, respondent issued checks from his trust account payable to “Cash” or to pay for meals, office expenses, travel expenses, and other improper purposes.
Finally, despite being personally served with a subpoena to appear before the ODC in August 2003 and to produce his file in this matter, respondent failed to appear.
The ODC alleged that respondent’s conduct violated Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4, 1.15(a)(b) (safekeeping property of clients or third persons), 1.16(d), 3.4(c), 8.1(c), 8.4(a), 8.4(c), 8.4(d), and 8.4(g) of the Rules of Professional Conduct.
Count II — The Smith Matter
In February 2003, Linda Smith hired respondent to handle her bankruptcy, paying him $350 towards a $500 fee. Respondent took little or no action in the matter. Therefore, Ms. Smith terminated the representation on July 13, 2003, requesting her file and the return of the $350. At that time, respondent returned Ms. Smith’s file and refunded $75 of the fee she had paid. He also promised to refund the rest of the unearned fee within thirty days. In response to Ms. Smith’s complaint filed with the ODC on October 3, 2003, respondent informed the ODC that he was entitled to $125 in fees but would refund the $150 unearned fee to Ms. Smith. However, he did not have the money at that time. On April 19, 2004, subsequent to the filing of formal charges, respondent paid Ms. Smith $225, representing the balance of the unearned fee.
hsThe ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, 1.5(f) (failure to refund an unearned fee), 1.16(d), and 8.4(a) of the Rules of Professional Conduct.
Respondent failed to answer or otherwise reply to the formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Both parties filed briefs for the hearing committee’s consideration.

Hearing Committee Recommendation

After considering the parties’ submissions, the hearing committee determined that the deemed admitted factual allegations were proven by clear and convincing evidence. Based on these deemed admitted facts, the committee found that respondent violated Rules 1.4, 1.15(a)(b), 8.1(c), *340 8.4(a), and 8.4(g) of the Rules of Professional Conduct with respect to Count I. However, the committee found that the deemed admitted facts did not prove by clear and convincing evidence violations of Rules 1.3, 1.16(d), 3.4(c), 8.4(c), and 8.4(d). In regard to Count II, the committee determined that respondent violated Rules 1.5(f), 1.16(d), and 8.4(a). However, the committee found that the deemed admitted facts did not prove by clear and convincing evidence violations of Rules 1.3 and 1.4.
Specifically, the committee found that respondent failed to keep Mr. McClinton reasonably informed because he failed to provide his client with the requested accounting and copies of his work product or court decisions. Respondent also commingled Mr. McClinton’s funds with his own when he issued checks payable to “cash.” Mr. McClinton’s $7,500 check was returned for insufficient funds in | ^respondent’s trust account, indicating respondent failed to safeguard Mr. McClin-ton’s funds. Subsequently, respondent failed to promptly pay Mr. McClinton the entire $7,500; nor did he render a full accounting to Mr. McClinton. Respondent further failed to cooperate with the ODC in its investigation of the McClinton matter. With respect to Count II, the committee found that respondent failed to immediately refund the unearned fee to Ms. Smith when the representation was terminated and the fee dispute arose.
In acting as he did, the committee determined that respondent violated duties owed to his clients and as a professional. Respondent caused some actual harm to both clients; however, the harm was not serious or significant. Nevertheless, the potential for serious harm existed. The committee determined that there was a lack of clear and convincing evidence as to respondent’s mental state. Thus, it assigned negligence, the lowest level of mental culpability, to each rule violation. The baseline sanction is a reprimand.
The committee found no mitigating factors present but noted the following aggravating factors: prior disciplinary offenses, multiple offenses, and substantial experience in the practice of law (admitted 1986).
Under these circumstances and considering this court’s prior jurisprudence, the committee recommended that respondent be suspended from the practice of law for six months, with three months deferred, followed by one year of probation with conditions.
Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.

Disciplinary Board Recommendation

02-DB-018, 03-DB-056, & 03-DB-083

117After reviewing the three consolidated matters, the disciplinary board made findings as follows:
02-DB-018: In Count I, the board modified the hearing committee’s eighth factual finding to read, “There is no credible evidence to show that the loan was repaid.” In all other respects, the board adopted the factual findings of the hearing committee. Based on those findings, the board determined that respondent violated Rules 1.1(a), 1.4, 1.8, 1.14, 1.16, 8.4(a), 8.4(c), and 8.4(d). The board adopted the committee’s rationale for the violations of Rules 1.1(a), 1.14, and 1.16. Additionally, the board determined that an attorney-client relationship existed between respondent and Ms. Jones; nonetheless, respondent failed to communicate with Ms. Jones. He also misrepresented to her the purpose of the $14,000 withdrawal. Furthermore, respondent borrowed funds from Mr. Davis’ trust, which the board concluded was unfair and unreasonable to Mr. Davis. Finally, respondent had repeated contact with Mr. Davis after the lawsuit was filed. *341 The board found no violation of Rule 1.15(a) because respondent retained Mr. Davis’ funds in his office safe to accommodate Mr. Davis’ requests.
With respect to Count II, the board rejected the ODC’s amendment to the formal charges withdrawing the Count.[9] The board then adopted the factual findings of the committee. Based on these findings, the board determined that respondent violated only Rules 1.5(f)(5) and 8.4(a) because he failed to deposit the disputed fee into a trust account until resolution of the fee dispute.
03-DB-056: The board determined thát the committee correctly concluded that respondent’s exception of prescription was without merit. The board also agreed with the committee’s denial of respondent’s exception of res judicata.
11sThe board adopted the committee’s factual findings- and conclusions of law. Additionally, the board agreed that the misconduct has “no practical effect” on the recommended sanction for the consolidated matters.
03-DB-083: The board determined that the factual allegations of the formal charges were proven by clear and convincing evidence. The board also adopted the rule violations found by the committee.
Based on these findings, the board determined that respondent knowingly violated duties owed to his client and the legal system in the Davis Trust matter. He negligently violated dutiés owed to his clients and as a professional in the McClin-ton and Smith matters. Respondent’s misconduct also caused serious potential harm to his clients and third parties in the McClinton and Smith matters. According to the ABA’s Standards for Imposing Lawyer Sanctions, suspension is the baseline sanction.
In aggravation, the board found prior disciplinary offenses, a pattern of misconduct, multiple offenses, substantial experience in the practice of law, and vulnerability of the victim. The board found no mitigating factors.
Considering the above and this court’s prior jurisprudence, the board recommended that respondent be disbarred, retroactive to the date of his interim suspension. The board also recommended that respondent be assessed with all costs and expenses of these proceedings.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an 1 ^independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992).
Our' review indicates the record supports a finding of misconduct in the Davis Trust matter. Respondent acted as the attorney for both Ms. Jones and Mr. Davis. He drew up an irrevocable trust document and named himself as trustee over Mr. Davis’ funds even though he did not have the requisite training or knowledge for such a position. Thereafter, he failed to properly communicate with Ms. *342 Jones. He also requested and obtained a loan from Mr. Davis, who, based on his testimony at both hearings, appears to have some amount of mental disability or deficiency. He also kept Mr. Davis’ cash in his office safe in order to prevent Ms. Jones from learning of her son’s spending habits. When Ms. Jones could get no reasonable explanation from respondent regarding the $14,000 withdrawal, she retained the services of another attorney to sue him on behalf of herself and her son. Despite the lawsuit, respondent continued to have repeated contact with Mr. Davis and took advantage of his deficient mental capacity in an attempt to have the lawsuit dismissed and his liability released. Respondent’s actions violated Rules 1.1(a), 1.4, 1.7, 1.8, 1.14, 1.15(a), 1.16, 2.1, 2.2, 3.4(c), 4.2, 8.4(a), 8.4(c), and 8.4(d) of the Rules of Professional Conduct.
In the Stills matter, which amounted to a fee dispute, respondent failed to place the disputed funds in a trust account upon first becoming aware of the dispute. When he was ordered to refund $1,200 to the Stills, he did not have the funds available and was unable to do so. His actions in not placing the disputed funds in a trust account violated Rules 1.5(f)(5) and 8.4(a) of the Rules of Professional Conduct.[10]
| j>nThe McClinton matter involved respondent’s failure to timely remit settlement funds to his client due .to the fact that there were insufficient funds in Ms client trust account. Arguably, the deficiency was caused by respondent’s improper use of his trust account to pay office expenses, food expenses, travel expenses, and other inappropriate expenses, indicating he converted the funds to his own use. Respondent also failed to provide Mr. McClinton with requested accountings of the fees he had paid for specific services; nor would respondent provide his client with requested copies of the work he had done in the case. When the matter came to the attention of the ODC, respondent failed to cooperate in the investigation. In acting as he did, respondent violated Rules 1.4, 1.15(a)(b), 8.1(c), 8.4(a), and 8.4(g) of the Rules of Professional Conduct.
Finally, in the Smith matter, upon being discharged, respondent failed to promptly refund the unearned fee. In doing so, he violated Rules 1.5(f) and 8.4(a) of the Rules of Professional Conduct.
Having found professional misconduct, the sole issue presented for our consideration is the appropriate sanction. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
1 ¾1 Without diminishing the seriousness of respondent’s actions in the Stills, McClinton and Smith matters, we find the most egregious misconduct committed by respondent occurred in the Davis Trust *343 matter. Respondent failed to competently discharge his fiduciary obligations as trustee. Respondent then engaged in a scheme intended to frustrate the beneficiary’s attempts to remove him as trustee.
Given the unique facts of respondent’s misconduct in the Davis Trust matter, there are no cases directly on point. Nonetheless, we find some guidance from In re: Letellier, 98-2646 (La.9/8/99), 742 So.2d 544, in which we disbarred an attorney who entered' into prohibited business transactions with an elderly client with a history of psychiatric problems. While we recognize that some of the misconduct at issue in Letellier, such as commingling of funds, is not present in the instant case, our opinion emphasized the egregious nature of the attorney’s use of his legal skills to take advantage of “an obviously vulnerable victim.” In the same way, we find respondent intentionally used his legal skills to the disadvantage of Mr. Davis, a mentally-disabled client, by engaging in questionable transactions with him and by seeking to thwart attempts by Mr. Davis and his family to remove respondent as trustee. The baseline sanction for such misconduct is disbarment.
In aggravation, we recognize respondent’s prior disciplinary offenses, a dishonest or selfish motive, a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, and substantial experience in the practice of law. We are unable to discern any mitigating factors from the record.
Accordingly, we will adopt the disciplinary board’s recommendation and disbar respondent, retroactive to his March 23, 2004 interim suspension.
DECREE
laaUpon review of the findings and recommendations of the hearing committees and disciplinary board, and considering the record, it is ordered that Vincent C. Co-field, Louisiana Bar Roll number 17514, be and he hereby is disbarred, retroactive to his March 23, 2004 interim suspension. His name shall be stricken from the roll of attorneys and his license to practice law in the State of Louisiana shall be revoked. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. According to respondent's calculations, these advances totaled $6,965.

. Three days later, Mr. Davis indicated that he did not sign the statement voluntarily, did not agree with the statement, arid wanted Mr. Crews to continue with the lawsuit.

.When respondent became trustee, Mr. Davis' Edward Jones account contained $350,756.62 in investments and $216,134 in *334 indebtedness to Edward Jones. Because of the volatility and uncertainty of the stock market, on September 17, 1999, respondent directed Edward Jones to liquidate the account and pay off the outstanding debt. The balance of $105,460.37 was placed into a money market fund, from which respondent withdrew the $14,000 in cash. This left a balance of approximately $91,000.

. The arbitrator’s reasons for the award were as follows:
1. It should inform Mr. and Mrs. Stills that the award is not being made because of a lack of services performed by the attorney, but for the attorney's failure to keep them advised; and
2. It may prevent Mr. Cofield from finding himself in a similar case in the future.

. It appears that this may have been a typographical error as respondent was charged with an 8.4(d) violation and not an 8.4(b) violation.

. Respondent was admonished by the disciplinary board on November 5, 1999 for neglecting a legal matter.

. Respondent issued a check to Ms. Smith in the amount of $7,500 on March 19, 2002.
*339 The check cleared respondent's trust account on March 20, 2002.

. The $200 payment was forwarded to the ODC along with respondent’s response to Mr. McClinton’s initial complaint.

. The board reasoned that the ODC failed to cite any authority supporting withdrawal of a portion of the formal charges after the hearing committee determined that respondent's actions violated the Rules of Professional ’Conduct.

. As stated earlier, the ODC attempted to dismiss this charge after the hearing committee rendered its recommendation. We find no authority in Rule XIX or in our jurisprudence which authorizes the ODC to dismiss formal charges after a hearing committee has determined a rule violation occurred. Rather, we analogize the situation to In re Lieberman, 95-2628 (La.6/7/96), 675 So.2d 272, in which we held the disciplinary board could not reject a petition for consent discipline after the parties stipulated to a professional violation.